<u>*Sandra Holding Ltd. v. Fawzi Musaed Al Saleh, et. al.*</u>

<u>*Case No. 18-91406*</u>

_____

**Declaration of Thomas Lowe**

_____

I, THOMAS LOWE OF WILBERFORCE CHAMBERS, GEORGETOWN, CAYMAN ISLANDS, DECLARE AS FOLLOWS:

**INTRODUCTION**

1. I am a barrister and Queen's Counsel resident in the Cayman Islands generally admitted to practise in England and Wales and the Cayman Islands. I was admitted to practice in England and Wales in 1985, in the Cayman Islands in 2010, and was appointed Queen's Counsel in 2008.

2. I have personal knowledge of the facts herein and, if called to testify as a witness, would testify consistently with the facts stated herein.

3. I am instructed by Wilmer Cutler Pickering Hale and Dorr LLP who act for the Respondents in an application by Sandra Holdings Ltd under §1782 of Title 28 of the US Civil Procedure Code in the United States District Court in the District of Massachusetts.

4. I have been provided with the Memorandum of Law Support of Application For Order Granting Leave to Conduct Discovery For Use in Proceeding in Foreign Tribunal Pursuant to 28 U.S.C. §1782, including the supporting declarations of Ulrick James Payne, Nuri Musaed Al Saleh, Thomas M. Ciampa (without exhibits).

5. I am asked to provide my opinion on the issues listed in paragraph 6 that bear on Cayman Islands law. I understand that this opinion will be placed before the United States District Court, District of Massachusetts.

6. In particular, I have been asked to provide my opinion on the following issues:

(a) whether pre-action discovery is permitted;

(b) a summary of parties' discovery obligations;

(c) the requirements for pleading a claim of fraud;

(d) the requirements for commencing a proceeding by writ;

(e) whether evidence may be obtained by deposition;

(f) the extent to which evidence obtained through foreign process may be used;

(g) limitation periods in the Cayman Islands; and

(h) the entitlement of shareholders to information about the an exempted Company.

**NO PRE-ACTION DISCOVERY**

7. In general terms, and in ordinary proceedings, there is no power in the Cayman Islands Grand Court Rules (2015 Revision) (the "**Grand Court Rules**") for the Court to order discovery before the commencement of proceedings. Discovery against parties or non-parties before the commencement of proceedings is not generally permitted as a matter of Cayman Islands law.

8. There is a limited situation in which the Court may order a third party who has been innocently "mixed up" in wrongdoing to provide information or disclosure before the commencement of proceedings, known as a *"Norwich Pharmacal order."* This principle is derived from the decision of the House of Lords in *Norwich Pharmacal Co and Others v Customs and Excise Commissioners* [1974] AC 133[1] (attached as **Exhibit B**).

9. *Norwich Pharmacal* was an action against the Customs authorities for an order that they disclose the identity of those who, by importing pharmaceuticals the subject of the plaintiff's patent, had infringed it. The Customs authorities had control over the goods at the point of importation and were therefore unwittingly involved in the infringement, although not a party to it. The House of

---

[1] Except where the position under Cayman Islands law is obviously different from the position under English Law, the practice has invariably been for the Courts of the Cayman Islands to have regard to and follow the decisions of the Supreme Court of the United Kingdom England and Wales (and its predecessor the House of Lords) and of the English Court of Appeal. However, strictly speaking, with the exception of decisions of the Judicial Committee of the Privy Council (which is the Court of final appeal for the Cayman Islands) decisions of the Courts in England and Wales are of persuasive authority only.

Lords ordered that disclosure be provided. The decisive factor was that the Customs authorities had facilitated the tort, albeit innocently, as opposed to just having possession of the relevant information. The principle was stated by Lord Reid as follows:

> *"…if through no fault of his own a person gets mixed up in the tortious acts of others so as to facilitate their wrong-doing he may incur no personal liability but he comes under a duty to assist the person who has been wronged by giving him full information and disclosing the identity of the wrongdoers. I do not think it matters whether he became so mixed up by voluntary action on his part or because it was his duty to do what he did. It may be that if this causes him expense the person seeking the information might reimburse him. But justice requires that he should co-operate in righting the wrong if he unwittingly facilitated its perpetration."*[2]

10. The English Court has noted that the disclosure sought must be necessary in order to enable the applicant to bring legal proceedings or seek other legitimate redress for the wrongdoing.[3] A *Norwich Pharmacal order* should not be sought for the improper purpose of obtaining a litigation advantage in other proceedings, and such a collateral purpose is not one that engages the policy justification for the jurisdiction.[4]

11. The *Norwich Pharmacal* principle was affirmed, and arguably extended, in *Bankers Trust Co. v Shapira* [1980] 1 WLR (attached as **Exhibit D**) where the English Court of Appeal ordered that a bank which had become innocently mixed up in wrongful conduct to disclose information to enable funds to be traced.

12. In essence, a *Bankers Trust order* can be used to compel a third party to disclose details of financial activities which might ordinarily be protected by its duties of confidentiality.

---

[2] *Norwich Pharmacal Co and Others v Customs and Excise Commissioners* [1974] AC 133 at p 175B-C, per Lord Reid.
[3] *Orb ARL v Fiddler* [2016] EWHC 361 (Comm) at [85] (attached as **Exhibit C**)
[4] *Orb ARL v Fiddler* [2016] EWHC 361 (Comm) at [91] (attached as **Exhibit C**)

13. The principles in *Norwich Pharmacal* and *Bankers Trust* have been applied in the Cayman Islands.[5] However, the Grand Court has noted that, in granting an order that a bank and trust company carrying on business in the Cayman Islands be required to provide information to assist with tracing funds allegedly misappropriated, relying on these principles, this does not amount to an order for general discovery:

> *"I also emphasize the importance of the caveat that this order is not one for general discovery but one in aid of the tracing action only and that information obtained pursuant to it may not be used or disclosed otherwise."*[6]

14. In my view, a *Norwich Pharmacal order* or *Bankers Trust order* may be used to identify the proper defendant to an action or to obtain information to be able to plead a claim, not to obtain evidence to support that claim.

15. I am aware of only one reported decision in the Cayman Islands, the case of *Ferrostaal AG v Jones & Five Others* [1984 CILR 143] (attached as **Exhibit F**) (Hull J), where discovery has been ordered against a defendant before a statement of claim had been filed. This order was made under a previous discovery regime which no longer applies.

16. I am not aware of any other reported decisions where pre-action discovery has been ordered against a defendant or beyond the limited jurisdiction in *Norwich Pharmacal* and *Bankers Trust*.

---

[5] See for example: *C Corporation v P & Eight Others* [1994-95 CILR 189] at page 203 per Smellie CJ. (attached as **Exhibit E** )

[6] *C Corporation v P & Eight Others* [1994-95 CILR 189] at page 204 per Smellie CJ. (attached as **Exhibit E**)

**DISCOVERY**

17. The Grand Court Rules provide that discovery of documents in the possession, custody or power of the parties relating to matters in question in the action is to be provided after the close of pleadings (Order 24, rule 1(1) attached as **Exhibit A, page 18**).

18. Unless the Court makes an order for discovery, the parties must exchange discovery within 14 days after the pleadings in the action are deemed to be closed (Order 24, rule 2(1) attached as **Exhibit A, page 18**). Pleadings are deemed to be closed at the expiration of 14 days after service of a reply, or defence to a counterclaim, or if neither a reply or counterclaim is served, then 14 days after service of the defence (Order 18, rule 20 attached as **Exhibit A, page 16**).

19. In practice, discovery is generally given pursuant to an order of the Court, where the Court will either endorse a date agreed by the parties, or set the date for exchange.  In either case, it will be ordered to be given after the pleadings have been exchanged.

20. The parties' discovery obligations are broad.  The obligation extends to all documents that may either advance or damage the case of the other party and documents that may fairly lead to a train of enquiry that would have either of those consequences.[7] However, the Court will not permit requests for documents that amount to a "fishing expedition."[8]

21. A non-party may also be the subject of a subpoena duces tecum requiring the person to attend Court and produce any document, the production of which appears to the Court to be necessary for the purpose of that proceeding (Order 38, rule 13 of the Grand Court Rules attached as **Exhibit A, page 33**).

---

[7] *Peruvian Guano Go* (1882) 11 QBC 55 (attached as **Exhibit G**), applied in *Renova Resources Private Equity Limited v Gilbertson* [2011] (2) CILR 148. (attached as **Exhibit H**)

[8] *Rio Tinto Zinc. Corp. v Westinghouse Elec. Corp* [1978] AC 547; [1978] 1 All ER 434 (attached as **Exhibit I**)*,* cited in *In re C* [1994-95] CILR 254 at page 260. (attached as **Exhibit J**)

**PLEADING FRAUD IN THE CAYMAN ISLANDS**

22. Order 18, rule 12(1) (attached as **Exhibit A, page 13)** of the Grand Court Rules requires that a pleading contain particulars of a claim, and specifically in relation to inter alia a pleading of fraud. The relevant excerpt from the rule is:

> *"Every pleading must contain the necessary particulars of any claim, defence or other matter pleaded including, without prejudice to the generality of the foregoing words –*
>
> *(a)   Particulars of any misrepresentation, fraud, breach of trust, wilful default or undue influence on which the party pleading relies; and*
> *(b)   Where a party pleading alleges any condition of the mind of any person, whether any disorder or disability of mind or any malice, fraudulent intention or other condition of mind except knowledge, particulars of the facts on which the party relies."*

23. The purpose of particulars is summarised in the commentary to the Rules of the Supreme Court in *The Supreme Court Practice 1999* (commonly known as the "White Book"[9]) as inter alia:[10]

   (1) To inform the other side of the nature of the case that they have to meet;
   (2) To prevent the other side from being taken by surprise at trial;
   (3) To enable the other side to know with what evidence they ought to be prepared and to prepare for trial;
   (4) To limit the generality of the pleadings;
   (5) To limit and define the issues to be tried, and as to which discovery is required; and
   (6) To tie the hands of the party so that he cannot without leave go into any matters not included.

---

[9]  The "White Book" is commentary compiled by leading practitioners and Judges in England on the English Rules of Court. The current version of the Grand Court Rules mirrors the English Rules of Court as they were in 1999. As such, the commentary contained in the 1999 White Book provides a useful resource when considering the scope and effect of the Grand Court Rules and is commonly cited by the Cayman Courts in this regard.

[10] Adams & Ors, *The Supreme Court Practice 1999* (2017, London, Sweet & Maxwell) volume 1, at paragraph 18/12/2. (attached as **Exhibit K**)

24. At paragraph 3 of his Declaration, Mr Payne paraphrases Rule 8.04 of the Cayman Islands Legal Practitioners' Code of Conduct (attached as **Exhibit L**). The summary given is not complete. The full extract from the relevant part of Rule 8.04 is set out in full below (with the missing wording underlined):

> *"An attorney must not attack a person's reputation without good cause nor make any allegation of fraud or dishonesty unless he has clear instructions to do so and has satisfied himself that there is reasonably credible material <u>supporting a prima facie case</u>"*

25. The decision of the English House of Lords in *Medcalf v Weatherill & Others [2002] UKHL 27* (attached as **Exhibit M**) is recognised as the leading English authority on the duty of a person pleading fraud and I consider it would be followed in Cayman. In *Medcalf* the English equivalent of Rule 8.04 was considered, Lords Bingham said in relation to the English rule:

> *"... the requirement is not that counsel should necessarily have before him evidence in admissible form but that he should have material of such a character as to lead responsible counsel to conclude that serious allegations should properly be based upon it".*

**COMMENCING PROCEEDINGS BY WRIT**

26. Proceedings in which any claim by the plaintiff is based on fraud must be commenced by writ (Order 5, rule 2(b) of the Grand Court Rules attached as **Exhibit A, page 3**).

27. Before a writ is issued it must be indorsed with a statement of claim or, if the statement of claim is not indorsed on the writ, with a concise statement of the nature of the claim made or the relief or remedy required in the action begun thereby (Order 6, rule 2(a) of the Grand Court Rules attached as **Exhibit A, page 5**).

28. Where the statement of claim is not indorsed on the writ, unless the Court gives leave to the contrary, the statement of claim must be served no later than 14 days after the defendant gives notice of intention to defend (Order 18, rule 1 of the Grand Court Rules attached as **Exhibit A, page 9**).

29. Every pleading must contain, and must only contain, a statement in summary form of the material facts on which the party pleading relies for the claim (or defence) as the case may be but not the evidence by which those facts are to be proved (Order 18, rule 7 of the Grand Court Rules attached as **Exhibit A, pages 10 to 11**). This is an express requirement in the Rules, which also state that the statement must be at brief at the nature of the case admits.

**DEPOSITIONS**

30. No deposition shall be received in evidence at trial unless it is taken in accordance with Order 39 of the Rules, and either the party against whom the evidence is offered consents, or it is proved that the deponent is deceased, beyond the jurisdiction of the Court or unable through sickness to attend the trial (Order 38(9) (1) of the Grand Court Rules attached as **Exhibit A, page 32**).

31. The Court may only make an order for the examination on oath of a person where it appears *"necessary for the purposes of justice"* (Order 39, rule 1(1) of the Grand Court Rules attached as **Exhibit A, page 43**). The Court may give particular consideration as to the appropriate terms of any order, including whether discovery should be given before the examination takes place (Order 39, rule 1(2) of the Grand Court Rules attached as **Exhibit A, page 43**). Where the person to be examined is out of the jurisdiction, an application may be made for a letter of request for assistance from a foreign court requesting assistance in the taking of evidence (Order 39, rules 2 and 3 of the Grand Court Rules attached as **Exhibit A, pages 43 to 44**). Depositions are rarely used in the Cayman Islands and are not ordered as a matter of course.

32. The Grand Court may make an order for discovery by oral examination of any party, but only to the extent the Court is of the opinion that discovery by oral examination *"is necessary either for disposing fairly of the cause or matter or for saving costs"* (Order 24, rule 16(1) and (2) of the Grand Court Rules attached as **Exhibit A, page 24**). An order for oral discovery also cannot be made until after documentary discovery has been provided, or unless the Court determines that discovery of documents is not needed (Order 24, rule 16(3) of the Grand Court Rules attached as **Exhibit A, page 24**). Discovery by oral examination is rarely sought in the Cayman Islands.

**EVIDENCE OBTAINED THROUGH FOREIGN PROCESS**

33. I agree with the observations made by Mr Payne that the Grand Court has been prepared to approve parties to Cayman-based litigation obtaining disclosure through the use of 28 U.S.C. § 1782, save that I wish to note that in the Cayman Islands case cited by him, *Lyxor Asset Management SA v Phoenix Meridian Equity Limited* [2009 CILR 553] (attached as **Exhibit N**), the proceedings had already commenced and were at an advanced stage. I am not aware of any case in which the Grand Court has considered the use of evidence obtained in this manner. As noted, there is no regime for general pre-trial discovery in the Cayman Islands.

34. I would also like to emphasise that it is for the Grand Court to determine the admissibility of any such evidence, in any Cayman proceedings, once obtained. The Grand Court in *Lyxor Asset Management SA (supra)* noted at paragraph 47:

   > *"The use to which the transcripts of depositions taken in New York may be put in the Cayman proceedings is, of course, a matter for the Grand Court. In contrast to the position under O.24, r.16 of the Grand Court Rules… no transcript of depositions would be admissible as evidence at trial without an order of the Grand Court. In deciding what order to make in this respect, it will be open to the Grand Court to restrict the use which can be made of the deposition transcripts in the course of any cross-examination of [the deponents] at trial…"*

**LIMITATION PERIODS**

35. Limitation periods in the Cayman Islands are imposed by the Limitation Law (1996 Revision) (the "**Limitation Law**") (attached as **Exhibit O**).

36. The prescribed time limits include:

   (a) Breach of contract, generally 6 years to claim from the date of the breach; if the contract is a deed, 12 years from the date of breach;

   (b) Tortious act, generally 6 years to claim from the date damage was suffered;

<ol start="c">
<li>Where fraud, concealment or mistake can be argued on a breach of contract or tort claim, 6 years from the date the claimant discovers, or could have reasonably discovered, the fraud, concealment or mistake.</li>
</ol>

37. A derivative claim can stem from a breach of contract but more typically arises in respect of a breach of fiduciary duty. The equivalent English statute, the Limitation Act 1980 (the **"1980 Act"**), closely mirrors the Cayman Limitation Law. The English Court of Appeal has stated that the starting point when considering the application of the English Act to claims against fiduciaries is the assumption that a 6 year limitation period would apply, either directly or by analogy under one or other provisions of the 1980 Act, unless the limitation period was specifically excluded by the Act or established case law.[11]

38. Cayman law also recognises the equitable doctrine of laches which requires that remedies should be sought without unreasonable delay.

**EXEMPTED LIMITED COMPANIES**

39. Cayman Islands company law is largely governed by the Companies Law (2018 Revision) (the "**Companies Law**"). Pursuant to the Companies Law, a limited company can be incorporated as either an "ordinary company"[12] or an "exempted company."[13] An exempted company is a company that has been incorporated for the purpose of conducting business mainly outside of the Cayman Islands (ss 164 and 165 Companies Law attached as **Exhibit Q**). I understand from my instructing attorneys that Universal Enterprises Ltd is an exempted company.

40. Unless the Articles of Association provide otherwise, under the Companies Law, a Cayman Islands exempted company is not required to make any information about the company publicly available, other than:

---

[11] *Gwembe Valley Development Co Ltd (in receivership) and another v Koshy* and others [2003] EWCA Civ. 1048. (attached as **Exhibit P**)

[12] This is a term not directly defined by the Companies Law but is the commonly used term for companies incorporated in the Cayman Islands and not registered as an exempted company.

[13] Being a company registered as an exempted company pursuant to s 164 of the Companies Law.

    (a) the location of its registered office (s 51 Companies Law, attached as **Exhibit R**);

    (b) the name of the company (ss 52 and 53 Companies Law, attached as **Exhibit R**);

    (c) the type of company (that is, whether it is an "ordinary company" or an "exempted company"); and

    (d) the company number and date of incorporation.

41. Unless it is expressly provided for in the company's Articles of Association, or other contract, for example, a shareholders agreement, the Companies Law provides no entitlement to a shareholder of Cayman Islands exempted company, simply by virtue of his/her position as a shareholder, to inspection of the books and records of the company.

**DECLARATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2018

*Tom Lowe*
_____
**Thomas Lowe QC**