**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SANDRA HOLDING LTD.,<br><br>   Petitioner,<br> vs.<br><br>FAWZI MUSAED AL SALEH, AHMAD FAWZI AL SALEH, QUABBIN CAPITAL, INC., AND JOHN I. SNOW III,<br><br>   Respondents. | **Case No.: 18-MC-91406 (PBS)** |

**(CORRECTED) MEMORANDUM OF LAW IN OPPOSITION OF APPLICATION FOR ORDER GRANTING LEAVE TO CONDUCT DISCOVERY FOR USE IN PROCEEDING IN FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

A.    The Respondents............................................................................................................2

B.    Sandra Holding's Stated Reasons For Pre-Litigation Discovery............................................3

C.    Litigation In The Cayman Islands......................................................................................5

ARGUMENT ..........................................................................................................................5

A.    The Application Must Be Denied Because Sandra Holding Has Not Satisfied Section 1782's Threshold Requirements .................................................................................6

    1.    Ahmed Does Not Reside, And Was Not Found, In Massachusetts ..............................6

    2.    Section 1782 Cannot Be Used To Subpoena Evidence Outside the U.S......................7

    3.    Section 1782 Cannot Be Used As A "Fishing Expedition" for Possible Litigation ......8

B.    The Application Should Also Be Denied As A Matter Of Discretion...............................10

    1.    The Burden of The Proposed Discovery Weighs Strongly In Favor of Denying the Petition ...........................................................................................................11

    2.    Discovery Should Not Be Allowed For Those Who May Be Parties To Any Litigation in the Cayman Islands. .....................................................................................12

    3.    Cayman Policies Also Weigh Against The Petition .....................................................13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014) ...... 9

*In re: Application of Gazprom Latin America Servicios, C.A.*, 2016 WL 3654590 (S.D. Tex. July 6, 2016) ...... 7, 8

*In re Application Pursuant to 28 U.S.C. Sec. 1782*, 2014 WL 4181618 (S.D. Ohio Aug. 21, 2014) ...... 8

*In re Certain Funds*, 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ...... 7, 8, 9

*In re Ex Parte Application of IJK Palm LLC*, Case No. 16-MC-171 (D. Conn.) ...... 14

*In re Godfrey*, 526 F.Supp.2d 417 (S.D.N.Y. 2007) ...... 7

*In re Letter of Request from the Prosecution Serv. Of the U.K.*, 870 F.2d 686 (D.C. Cir. 1989) ...... 9

*In re Microsoft Corp.*, 428 F.Supp.2d 188 (S.D.N.Y. 2006) ...... 7

*In re Penner*, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ...... 14

*In re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151 (11th Cir.1988) ...... 8, 9

*In re RSM Prod. Corp.*, 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018) ...... 12

*In re Sargeant*, 278 F.Supp.3d 814 (S.D.N.Y. 2017) ...... 8

*In re Schlich*, 893 F.3d 40 (1st Cir. 2018) ...... 6, 10, 12, 13

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...... 5, 6, 8, 9, 10, 12

*Investment Vehicles v. KPMG, LLP*, 798 F.3d 113 (2d Cir. 2015) ...... 8

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.Supp.2d 45 (D.D.C. 2005) ...... 13

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1782 ............................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ..................................................................................................................5

Fed. R. Civ. P. 11 .....................................................................................................................5

Rule 30(b)(6) ..........................................................................................................................12

# INTRODUCTION[1]

The petitioner Sandra Holding Limited's application is a request to go on an international fishing expedition in which its Kuwaiti principal would use a United States statute, 28 U.S.C. § 1782, to take discovery of two other Kuwaiti citizens (his brother Fawzi Musaed Al Saleh ("Fawzi") and his nephew Ahmed Fawzi Al Saleh ("Ahmed")) in the hope of being able to someday file a lawsuit in the Cayman Islands.  The only tenuous connections to the United States and this district are that the petitioner's principal opportunistically had Fawzi served when he came to Massachusetts over the summer in search of experimental drugs that might treat his advanced Amyotrophic Lateral Sclerosis (ALS) condition and two other peripheral respondents (Quabbin Capital and John Snow) reside in Massachusetts.  Section 1782 was intended for the narrow purpose of aiding live proceedings in foreign tribunals, not to open up U.S. discovery to foreign citizens hoping to find a claim to bring in another country.

The application should be denied for a host of reasons.  It should be denied as to all respondents because Sandra Holding has not filed a lawsuit in the Cayman Islands or anywhere else.  Thus, there is no foreign "proceeding" for this Court to assist.  And the limited circumstances in which Section 1782 can be used before the initiation of a lawsuit are not applicable.  Among other reasons, Sandra Holding admits that it is presently unable to state a claim under Cayman law and has not provided a "concrete basis" to show it is "very likely" to be able to file one in the near term.  It is also clear from the broad proposed discovery requests— which include demands for ***more than thirty years*** worth of documents—that this is discovery in search of a claim.  Section 1782 cannot be used that way.  Nor can it be used to circumvent

---

[1] This corrections in this memorandum address several citations in Respondents' initial memorandum that cited to an incorrect paragraph number of the supporting Declaration of Thomas Lowe and correct a few typographical errors and formatting issues.  There are no substantive differences between this memorandum and the memorandum Respondents initially filed.

discovery restrictions in the Cayman Islands, which just like those in the United States, do not allow pre-suit discovery.

The petition also fails for other reasons that are unique that are unique to particular respondents. For example, the application fails as to the two Kuwaiti respondents because Section 1782 cannot be used to obtain discovery outside the United States, which is what the proposed subpoenas are trying to do. It fails as to Ahmed because he was not "found" in Massachusetts and therefore has yet to be served. Also, the burden on Fawzi and Ahmed in returning to the United States for the requested deposition would be undue. That is exponentially so for Fawzi, who is elderly and uses a feeding tube and ventilator. When he last traveled to the United States for medical appointments, Fawzi had to be accompanied throughout the flight by three medical professionals. Also, given his medical condition, it is unlikely that Fawzi could physically withstand a deposition. For these reasons, and those set forth below, the respondents respectfully request that the Court deny this application.

## BACKGROUND

**A.    The Respondents**

<u>Fawzi Musaed Al Saleh:</u>  Fawzi is a director of Universal.  *See* Declaration of Fawzi Musaed Al Saleh ("Fawzi Decl."), ¶ 3.  He is a citizen and resident of Kuwait. *Id.* at ¶ 3.  He is 79 years old, and very ill. *Id.* at ¶¶ 3, 5.  Fawzi has advanced ALS, is fed through a feeding tube, and needs the aid of a ventilator to breathe. *Id.* at ¶ 5.  He was only in Massachusetts this past summer to meet with specialists at the Massachusetts General Hospital to assess whether he might be a candidate for a research trial. *Id.* at ¶ 6.  To fly to the United States, Fawzi had to be accompanied by two nurses and a doctor. *Id.* at ¶ 9.  He also had to use the ventilator throughout the flight, which required his medical team to carry multiple sets of back-up batteries in case the

plane lost power in its seats during the flight.  *Id.*  Fawzi also had to obtain TSA approval to bring oxygen canisters on the flight, which the ventilator administers to help him breathe.  *Id.*

Before returning to Kuwait, Fawzi spent time on Cape Cod where his brother, Sandra Holding's principal, opportunistically served Fawzi with this application for discovery.  *Id.* at ¶ 7.  As he had planned before being served, Fawzi returned to Kuwait on October 1, 2018.  *Id.* at ¶ 8.

It now appears that, unfortunately, Fawzi will not be a candidate for any clinical trial.  *Id.* at ¶ 6.  He thus has no current plans to return to Massachusetts or the United States.  *Id.* at ¶ 9.

<u>Ahmed Fawzi Al Saleh</u>:  Ahmed is Fawzi's son.  *See* Declaration of Ahmed Fawzi Al Saleh ("Ahmed Decl."), ¶ 4.  He has no position in Universal.  *Id.* at ¶ 5.  Like his father, Ahmed is a citizen and resident of Kuwait.  *Id.* at ¶ 3.  He has not been to Massachusetts since this application was filed, and has never been served.  *Id.* at ¶ 4.

<u>Quabbin Capital</u>:  Contrary to Sandra Holding's assertions, Quabbin Capital ("Quabbin") is not a subsidiary of UEL.  It is an independent investment manager, which has a principal place of business in Boston.

<u>John Snow:</u>  Snow resides in Massachusetts.  He is the President & Managing Director of Quabbin.  Snow holds no position with UEL.

**B.      Sandra Holding's Stated Reasons For Pre-Litigation Discovery**

There is no current proceeding in the U.S. or anywhere else in the world relating Sandra Holding's complaints about Universal.  According to its moving papers, Sandra Holding is considering bringing a derivative action in the Cayman Islands against Fawzi for purported breach of fiduciary duty, misappropriation of company funds, and violating his purported obligations to inform shareholders about the company's financial condition.  Br. at 3.

3

It would be an understatement to say that the petition offers few details about Sandra Holding's possible claims.  The application concedes that Sandra Holding lacks sufficient information to state a claim in the Cayman Islands (*id.* at 4), but nevertheless seeks discovery on a wide range of historical issues it says are relevant to the "information and belief" assertions Sandra Holding made about Fawzi's supposed misappropriation of funds through a related party transaction in 2014 and that for decades, Fawzi purportedly concealed information from shareholders to which they are entitled under Universal's Articles of Incorporation (*id.* at 3-4).[2]

Without any meaningful explanation, Sandra Holding asks for leave to serve subpoenas on Fawzi, Ahmed, Quabbin, and Snow, each of which requests a deposition and demands the production of a dozen broad categories of document requests that each span ***more than thirty years***.  For example, Request No. 12 seeks "[a]ny and all communications to/from/cc/bcc" that relate to Sandra Holding (defined to also include any of its representatives, agents, and others acting on its behalf) "from January 1, 1987 through the present day."  Declaration of Thomas Ciampa ("Ciampa Decl.") (ECF No. 5), Exs. 1-4, 7.  Request No. 7 seeks "[a]ny and all documents detailing the structure of Universal Enterprises and its subsidiaries . . . including any and all information detailing any changes in structure" over the same period thirty-one year period.  *Id.* at 8.  Request No. 6 seeks "an explanation of the treatment of any revenues of Universal" since January 1, 1987.  *Id.*  Requests 7-11 seek "any and all documents detailing the ownership and management" of five entities over the same period, three of which (Hullbridge Co., Seapuit Holding Ltd., and Uphill) are not mentioned anywhere in the application.  *Id.*

---

[2]  Fawzi denies any wrongdoing or breach of duty.  Fawzi Decl. at ¶ 2.

4

C. **Litigation In The Cayman Islands**

According to the application, the requested discovery information is "require[d] . . . to meet the stringent pleading standards of the [Cayman Islands] Grand Court" where any litigation that might occur would be filed. Br. at 7. Contrary to that assertion, Cayman pleading standards do not present any unique information challenge. In fact, the Grand Court's pleading rules are remarkably similar to those in the federal rules. Similar to Fed. R. Civ. P. 9(b), Cayman rules require a plaintiff to plead the "necessary particulars" of any claim for misrepresentation, fraud, or breach of trust. *See* Declaration of Thomas Lowe ("Lowe Decl.") ¶ 22. And similar to Fed. R. Civ. P. 11, a lawyer asserting such a claim must first satisfy him or herself "that there is reasonably credible material supporting a prima facie case." *Id.* ¶ 24. Furthermore, the pleading practice in Cayman litigation is for the plaintiff to file a statement of claim in which it pleads alleged facts, just as a U.S. plaintiff does with a complaint. *Id.* ¶¶ 27-29. There is no obligation in the Cayman Islands to submit evidence with a statement of claim. *Id.*

As in the U.S., there is no mechanism in the Cayman Islands for pre-litigation discovery. *Id.* ¶¶ 7-16.[3] Discovery does not commence until after the defendant files its statement of defense and the pleadings are closed. *Id.* ¶¶ 18-19. Once discovery does commence, it is typically focused on the exchange of documents. *Id.* ¶¶ 32-33. Oral examination prior to trial is very rare and requires an order of the Grant Court. *Id.*

## ARGUMENT

Section 1782 is a mechanism that, in some circumstances, provides "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A petitioner must satisfy four threshold requirements to

---

[3] There is a limited exception, not applicable here, where a third party that has been innocently "mixed up" can be ordered by the Grand Court to provide information before the commencement of proceedings. *See* Lowe Decl. ¶ 8.

5

be eligible to seek discovery under the statute. Specifically, a petitioner must show that the proposed discovery is: (i) directed to a person who "resides in or is found" in the district where the court sits; (ii) for documents or testimony "for use in a [foreign ]proceeding;" (iii) made by a tribunal or upon the application of an interested party; *and* (iv) not seeking material is not protected by "any legally applicable privilege." *In re Schlich,* 893 F.3d 40, 46 (1st Cir. 2018) (citing *Intel*, 542 U.S. at 247 and 28 U.S.C. §1782(a)).

If the petitioner fails to satisfy any of those threshold requirements, the application *must* be denied. *See id.* ("discovery is proper *only* if" the threshold requirements are met) (emphasis added). But satisfying them does not confer a right to discovery. A district court still has discretion to deny the application. *See id.* at 47. In exercising that discretion, the court should consider: (i) whether the person from whom discovery is sought is a party to the foreign proceeding, in which case the need for discovery is much less because the foreign tribunal can order any appropriate discovery; (ii) the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) whether the discovery is an attempt to circumvent "foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) "whether the request is 'unduly intrusive or burdensome.'" *Id.* (quoting *Intel*, 542 U.S. at 252, 265).

**A.     The Application Must Be Denied Because Sandra Holding Has Not Satisfied Section 1782's Threshold Requirements**

**1.     Ahmed Does Not Reside, And Was Not Found, In Massachusetts**

Contrary to the assertion in Sandra Holding's brief, Ahmed was not on Cape Cod when Fawzi was served with these papers. *See* Ahmed Decl. ¶ 4; Fawzi Decl. ¶ 7. Sandra Holding will presumably concede as much, as it has tellingly filed affidavits of service with respect to

6

each respondent *except* Ahmed.  *See* ECF Nos. 8 (Fawzi), 9 (Quabbin), 10 (Snow).  Ahmed has not been served to this day.  Ahmed Decl. ¶ 4.  Nor could he have been.  Ahmed has not been in Massachusetts since before this application was filed.  *Id.*

Under these circumstances, the petition must be denied as to Ahmed.  *See, e.g., In re: Application of Gazprom Latin America Servicios, C.A.*, 2016 WL 3654590, at *10 (S.D. Tex. July 6, 2016) (non-resident was not "found" in district when he had "not been personally served while physically in this Court's jurisdiction, and indeed, has not been in this district since 2013"); *In re Godfrey*, 526 F.Supp.2d 417, 421 (S.D.N.Y. 2007) (respondent "was not 'found' in the Southern District just because service was left with his mother at her house in North Salem, New York, which certainly was not [respondent's] 'dwelling place or usual place of abode.'"); *In re Microsoft Corp.*, 428 F.Supp.2d 188, 193 (S.D.N.Y. 2006) (Dutch national was not "found" in the district as he had not been present in the district since the subpoenas were issued and was not personally served there).

### 2. Section 1782 Cannot Be Used To Subpoena Evidence Outside the U.S.

A corollary of the requirement that a witness reside or is found in the district is that the subpoenaed evidence must be located *inside* the United States.  *See In re Certain Funds*, 2014 WL 3404955 at *4 (S.D.N.Y. July 9, 2014) ("In examining a party's request to conduct discovery for use in a foreign proceeding, courts have read into § 1782 a threshold requirement that the material sought be located in the United States."); *In re Godfrey*, 526 F.Supp.2d at 423 ("[F]or purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States.").  That rule stems from the "legislative history of Section 1782 [which] establishes that [Section 1782] 'was intended to aid in obtaining oral and documentary evidence in the United States . . . and was not intended to provide discovery of evidence maintain[ed]

7

within a foreign district." *In re Application Pursuant to 28 U.S.C. Sec. 1782*, 2014 WL 4181618, at *3 (S.D. Ohio Aug. 21, 2014).

Under this principle, the application should be denied as to both Fawzi and Ahmed, who each reside in Kuwait. *See, e.g., In re: Application of Gazprom*, 2016 WL 3654590, at *12 (denying Section 1782 petition where the petitioner had "not submitted any evidence showing that the documents it seeks to have produced are within this district or within the United States" and the person petitioner was seeking to depose resided in Venezuela).

### 3. Section 1782 Cannot Be Used As A "Fishing Expedition" for Possible Litigation

As Sandra Holdings concedes, there is no "proceeding" in the Cayman Islands or anywhere else. *Compare* § 1782(a) (discovery only available to obtain evidence "for use in a [foreign] proceeding"). Although some courts have allowed discovery after the petitioner made a showing that a proceeding was within "reasonable contemplation" at the time of the request, *see e.g., Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015), the circumstances here would not qualify. In making an assessment like this, "[t]he district judge should satisfy himself that a proceeding is very likely to occur. If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request." *In re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir.1988) (abrogated on other grounds by *Intel*, 542 U.S. 241). In other words, courts must "guard against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse." *In re Certain Funds*, 2014 WL 3404955 at * 6 (denying application based on concern that petition was "more akin to a fishing expedition"); *see In re Sargeant*, 278 F.Supp.3d

814, 823 (S.D.N.Y. 2017) ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it.").

Contrary to Sandra Holding's assertions, it takes far more to satisfy this requirement than simply hiring a lawyer and declaring that litigation is on the horizon. Rather, a petitioner must set forth "'reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" *Certain Funds*, 798 F.3d at 123 (quoting *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) and *In re Letter of Request from the Prosecution Serv. Of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989)). "*At a minimum*, a § 1782 applicant must present to the district court some concrete basis from which [the court] can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124 (emphasis added). If "the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (quoting *In Re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) (*abrogated on other grounds by Intel*)).

There should be little question that Sandra Holding is using this application as a fishing expedition to determine whether litigation is possible. It admits that it is unable to state a viable claim and provides no meaningful explanation of the basis for its purported claims or the information it has gathered on its own. Nor has Sandra Holding presented evidence of a ripening dispute, such as a demand letter or something similar. The scope of the requested discovery is also revealing. If litigation was on the reasonable horizon and this request was only about filling in gaps in the details to comply with Cayman pleading standards, the requested discovery would

9

be narrowly targeted. The requests here are anything but targeted. Sandra Holding asks to take *four* depositions and serve *dozens* of document requests spanning a period of more than *30 years*. That is more discovery than is taken in many cases that have been filed in this district and are being actively litigated. Moreover, a subpoena that defines the "relevant period" in decades, is a sure sign of a fishing expedition. That is even more so when the document requests broadly demand "any and all" communications relating broad categories, such as anything related to the petitioner over thirty-one years. Ciampa Decl., Exs. 1-4, 7-8.

Sandra Holding's delay in pursuing its purported claims provides further evidence that it is fishing. The related party transaction Sandra Holdings is considering challenging occurred approximately four years ago in 2014. Br. at 3. Also, according to the petition, Universal has been failing to give shareholders purportedly required information for more than thirty years. *Id.* When there is a "substantial length of time" between the underlying event and the filing of a Section 1782 petition, it belies a petitioner's argument that litigation is reasonably contemplated. *See, e.g., Certain Funds*, 798 F.3d at 124 ("In light of the substantial length of time between the [potential defendants'] default in 2009 and the filing of the . . . § 1782 application in 2014, we cannot say that the district court erred in determining that the anticipated proceedings were not within reasonable contemplation at that time.").

B.     **The Application Should Also Be Denied As A Matter Of Discretion**

Even if Sandra Holding had satisfied the threshold requirements (which it has not done), the Court should still deny the application as a matter of discretion. The guiding factors set forth in *Intel* and *In re Schlich* weigh strongly in respondents' favor.

### 1. The Burden of The Proposed Discovery Weighs Strongly In Favor of Denying the Petition

Sandra Holding cannot credibly deny the extraordinary burden and expense of the discovery that it seeks to serve. The undue burden of the document requests is self-evident—they demand that each respondent provide *thirty-one years* worth of documents that are responsive to a dozen broad requests. *See supra* at 4. Sandra Holding makes hardly any showing of relevance, nor could it given the disparate requests and excessive time period. Among other things, the statute of limitations only covers a fraction of what Sandra Holding claims is the "relevant period." *See* Lowe Decl. ¶ 37 (Cayman statute of limitations is six years).[4] Also, many of the document request extend far beyond the limited information rights available in Universal's Articles of Incorporation. *Compare* Ciampa Decl. Ex. 6 ¶¶ 114, 39 (limited information rights) *with id.* Exs. 1-4 (Request Nos. 1-12). Under Cayman law, a shareholder has no right to any other information. *See* Lowe Decl. ¶ 41.

There is also undue burden associated with the depositions insofar as Sandra Holding is demanding the appearance of two Kuwaiti residents, who would have to fly halfway around the world to testify. The burden for Fawzi is exponentially greater, and potentially life threatening, given his unfortunate medical condition. The last time Fawzi came to Massachusetts hoping to be accepted into a clinical trial he had to be accompanied on the flight by two nurses and a doctor and also have room for his ventilator, back up batteries, and the oxygen canisters he needs to survive. *See* Fawzi Decl. ¶¶ 5-9 & Exs. A-B. Fawzi also had to obtain TSA approval to bring oxygen canisters on the flight. *See id.* And even if he could endure the travel, Fawzi is uncertain that he could physically withstand a deposition. *See id.* at ¶ 10. He should not have to.

---

[4] Sandra Holding cannot avoid the statute of limitations with a reflexive resort to any form of a discovery rule. Much of its claim relates to purported failures to hold shareholder meetings and provide certain information over the entire thirty-one year period. Any failure of duty (which respondents deny) would have been apparent to Sandra Holding from the outset.

11

There is also an uncertain burden with respect to the deposition of Quabbin as Sandra Holding has not indicated whether it is seeking a keeper or records or Rule 30(b)(6) deposition, and if intends the latter, it has not identified the topics of the deposition. *See* Ciampa Decl., Ex. 3 (proposed subpoena to Quabbin).

### 2. Discovery Should Not Be Allowed For Those Who May Be Parties To Any Litigation in the Cayman Islands.

"'[T]he need for § 1782(a) aid generally is not as apparent'" in the case of a party because a "'foreign tribunal has jurisdiction over those appearing before it[]and can itself order them to produce evidence.'" *In re Schlich*, 893 F.3d at 47 (quoting *Intel*, 542 U.S. at 264); *see also In re RSM Prod. Corp.*, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018) ("*Intel* counsels against permitting discovery of participants to a foreign proceeding . . . ."). That factor weighs most strongly against issuing the requested subpoena to Fawzi. According to the petition, he would be a defendant if Sandra Holding initiates litigation in the Cayman Islands. Br. at 3. Any discovery of Fawzi should be left to Cayman court, which, among other things, could better assess relevance and whether the "relevant period" really is thirty-one years.

Although this factor applies less strongly against discovery of the other respondents, it does not weigh in Sandra Holding's favor. While Sandra Holding suggests that any action in the Cayman Islands would be limited to Fawzi, it is careful to leave room for maneuvering by qualifying its statement as based on "current facts." The application also strongly suggests that Sandra Holding will try to pursue others as well. For example, the petition asserts, on information and belief" that "Fawzi and/or his son, Ahmad" "orchestrated" the 2014 transaction that seems to at the center of Sandra Holding's principal complaint. Br. at 2.

### 3.     Cayman Policies Also Weigh Against The Petition

Among the things the Court should consider in exercising its discretion are whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country," the "character of the proceedings underway abroad," and the nature of the tribunal and its receptivity to U.S. assistance. *In re Schlich,* 893 F.3d at 47.  These factors balance against the application.

Most notably, there are no "proceedings underway abroad."  This application is about whether Sandra Holdings can take discovery to see *if* it can state a claim in the Cayman Islands. Pre-litigation discovery is inconsistent with the proof gathering policies and restrictions of both the Cayman Islands and the United States.  Neither country allows a plaintiff to put the cart in front of the horse.  In each jurisdiction, the plaintiff must file a complaint (or statement of claim) before discovery can begin.  *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.Supp.2d 45, 54 (D.D.C. 2005) (denying § 1782 application and explaining "[t]he Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit"); Lowe Decl. ¶¶ 9-16 (pre-action discovery is not allowed in the Cayman Grand Court).  That is for good reason.  Requiring the plaintiff to first state a claim limits the scope of discovery, informs the defendant of the nature of the case so that she can prepare, and avoids unfair surprise to witnesses and parties.  *See id*. ¶ 23.

The petition also seeks to circumvent Cayman policies and restrictions by asking for depositions, which "are rarely used in the Cayman Islands and are not ordered as a matter of course."  Lowe Decl. ¶ 31.  Depositions also require an order of the Grand Court.  *See id.*  Sandra Holding should not be allowed to circumvent Grand Court by taking depositions now.

Finally, Sandra Holding should not be so cavalier about the likelihood that the Grand Court will be receptive to any evidence taken as part of this process. The application cites only one case from a Cayman court that concerns evidence obtained in the United States through a Section 1782 petition. *See Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009 CILR 553] (Payne Decl. (ECF No. 4), Ex. A).[5] That case was, however, in a much different posture than this one. In *Lyxor*, an action was initiated in the Grand Court long *before* the plaintiff sought discovery through Section 1782. *See id.* ¶¶ 9, 25 (Cayman proceedings initiated on July 26, 2007 and §1782 Order obtained on October 20, 2008). The Grand Court is likely to be unreceptive to discovery in circumstance like this where the petitioner is taking pre-action discovery – as there is no regime for general pre-trial discovery in the Cayman Islands. *See* Lowe Decl. at ¶ 33.

---

[5] The other cases Sandra Holding cites are U.S. cases that are not persuasive. In *In re Penner*, 2017 WL 5632658, 3 (D. Mass. Nov. 22, 2017), the petitioner instituted proceedings in the Grand Court before the Section 1782 application was heard, "moot[ing]" that issue. The *IJK Palm* case is an unpublished magistrate's opinion which accepted at face value, *and on an ex pate basis*, the same conclusory assertions Mr. Payne makes here. When the respondents were given notice of the order, they promptly filed a motion to vacate which is still pending. *See In re Ex Parte Application of IJK Palm LLC*, Case No. 16-MC-171 (D. Conn.).

14

## **CONCLUSION**

For the foregoing reasons, respondents respectfully request that this Court deny Sandra Holding's application.

                                          Respectfully submitted,

                                          FAWZI MUSAED AL SALEH, AHMED FAWZI AL SALEH, QUABBIN CAPITAL, INC., and JOHN I. SNOW, III.

                                          /s/   John J. Butts
                                          John J. Butts (BBO No. 643201)
                                          Laila Ameri (BBO No. 690551)
                                          WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                          60 State Street
                                          Boston, MA 02109
                                          Telephone: (617) 526-6000
                                          Facsimile: (617) 526-5000
                                          john.butts@wilmerhale.com
                                          laila.ameri @wilmerhale.com

Dated:  October 12, 2018

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served via ECF to the counsel of record in the above-captioned matters on October 12, 2018.


*/s/ Laila Ameri*
Laila Ameri