UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
SANDRA HOLDING LTD.,

        Petitioner,

v.                                              No. 18-mc-91406-PBS

FAWZI MUSAED AL SALEH, AHMAD
FAWZI AL SALEH, QUABBIN
CAPITAL INC., AND JOHN I.
SNOW III,

        Respondents.
```

**ORDER ON PETITIONER'S MOTION FOR ISSUANCE OF
LETTERS ROGATORY UNDER 28 U.S.C. § 1782**

CABELL, U.S.M.J.

## I. INTRODUCTION

The petitioner, Sandra Holding Ltd. (Sandra Holding), seeks permission to obtain discovery in the United States for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. (Dkt. 1). In this case the petitioner seeks discovery from Fawzi Musaed Al Saleh (Fawzi), Fawzi's son Ahmad Fawzi Al Saleh (Ahmad), Quabbin Capital Inc. (Quabbin Capital), and John I. Snow, III (Snow) (collectively, respondents), for use in a proceeding before the Grand Court of the Cayman Islands.[1] The respondents oppose this motion, arguing that Sandra Holding has not satisfied the statutory requirements

---

[1] The petitioner subsequently withdrew its request with respect to Ahmad because it was unable to serve him in Massachusetts. (Dkt. 27). The court thus addresses only arguments related to Fawzi, Quabbin Capital, and Snow.

under 28 U.S.C. § 1782. (Dkt. 18). The respondents argue that the court should exercise its discretion to deny the motion even if Sandra Holding has satisfied these requirements. (Id.). The motion has been referred to this court for resolution. (Dkt. 21). For the reasons set forth below, the petitioner's motion is granted in part with respect to Quabbin Capital and Snow and denied with respect to Fawzi.

**II.  RELEVANT BACKGROUND**

During the 1980s, a group of brothers from Kuwait began investing in the United States through an offshore special purpose Cayman Islands company called Universal Enterprises, Ltd. ("Universal"). Each brother created an offshore trust company in the Cayman Islands to own his respective shares in Universal. The petitioner is owned by Nuri Musaed Al Saleh ("Nuri") and holds legal title to Nuri's shares in Universal. Yasmine Holding Ltd. is owned by Fawzi and/or his children and holds legal title to Fawzi's shares in Universal. Fawzi is the founding and sole director of Universal, though he may soon resign the position due to his age and poor health.[2]

The petitioner claims that since the creation of Universal, Fawzi has "failed and refused to disclose material information about Universal's finances and business activity to Sandra

---
[2] Fawzi was 79 years old at the time this matter was initiated, suffers from ALS, and is dependent upon a ventilator to breathe.

2

Holding." (Dkt. 2, at 2). Upon information and belief and based upon a review of certain company documents, the petitioner claims that Fawzi and/or his son Ahmad "orchestrated" a substantial sale of Universal's assets to a trust company controlled by Fawzi and Ahmad that was not an arms-length transaction in or around 2014. Sandra Holding alleges that it never received a distribution from this sale.

Pursuant to Universal's Articles of Association, if Sandra Holding were to bring an action against Universal and Fawzi, it must be filed in the Grand Court of the Cayman Islands. The petitioner has not yet filed an action in the Grand Court but contends that it reasonably anticipates doing so and has retained Cayman counsel to that effect. Through the present application, the petitioner seeks information it conceivably might use to prosecute that action, including what amounts to nearly all of Universal's corporate documents for the last thirty years. Specifically, the petitioner seeks to depose, and request documents from Fawzi, Quabbin Capital (an investment management firm the petitioner believes acted as a financial advisor to Fawzi and was a subsidiary of Universal), and Snow (President and Managing Director of Quabbin Capital).

### III. LEGAL STANDARD

A court may allow discovery to be sought in the United States for use in a foreign proceeding through an application pursuant to

28 U.S.C. § 1782. Section 1782 sets out four statutory requirements that a petitioner must satisfy as a threshold matter. Specifically, the petitioner must show that the request for discovery is: (1) directed to a person who "resides in or is found" in the district where the court sits; (2) for documents or testimony for use in a foreign proceeding; (3) made by a tribunal or upon the application of an interested party; and (4) not seeking material protected by "any legally applicable privilege." *See* § 1782(a); *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018).

"If all of these statutory requirements are met, the district court is authorized, *but not required*, to provide judicial assistance by permitting discovery." *In re Schlich*, 893 F.3d at 46 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)) (emphasis added). The Supreme Court identified four factors to be considered when exercising discretion on a § 1782 application in *Intel*: (1) whether the person from whom discovery is sought is a party to the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign tribunal to the court's assistance; (3) whether the applicant is attempting to circumvent the proof-gathering restrictions or policies of the foreign tribunal; and (4) whether the discovery requested is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *Minis v.*

4

*Thompson*, No. 14-91050-DJC, 2014 WL 1599947, at *3 (D. Mass. Apr. 18, 2014).

## IV. DISCUSSION

### A. Statutory Requirements

In this court's view, the petitioner has satisfied all four statutory requirements set out in § 1782. First, the respondents were either found in or reside in the District of Massachusetts. "[I]f a person is served . . . while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district." *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002). While Fawzi resides in Kuwait, he was personally served with this application while on Cape Cod. Therefore, Fawzi was "found in" this district. Quabbin Capital's principal place of business is in Boston, Massachusetts, and Snow resides in Winchester, Massachusetts. Therefore, Quabbin Capital and Snow "reside in" this district.

As to the second requirement, if the foreign proceeding is not already in progress, it must at least be "within reasonable contemplation," though it need not be "pending" or "imminent." *Intel*, 542 U.S. at 259. The circuit courts have grappled with the definition of "within reasonable contemplation" in this context. The Eleventh Circuit has upheld a § 1782 discovery order where the petitioner had conducted an extensive internal audit related to the contemplated action, provided a facially legitimate and

5

thorough explanation of this ongoing investigation, stated its intent both to commence a civil action and continue a related pending arbitration, and detailed how the discovery sought would be applied in its pleading before a foreign tribunal. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014). The Second Circuit has upheld the denial of a § 1782 application where the petitioner alleged only "that they had retained counsel and were discussing the *possibility* of initiating litigation," despite having five years and ample opportunity in which to commence investigations or initiate litigation. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015) (emphasis in original). In both cases, however, the courts caution that § 1782 should not be used to enable a fishing expedition, whereby the petitioner uses the discovery process in a blind effort to find damaging evidence to be used against an adversary without any specific underlying legal claims or theory of liability. See *JAS Forwarding*, 747 F.3d at 1274; *KPMG*, 798 F.3d at 124.

This court is persuaded that Sandra Holding has "reasonably contemplated" commencing an action in the Grand Court. The petitioner has retained Cayman counsel for the purpose of initiating that action. Though the retention of foreign counsel alone was not sufficient to obtain discovery in *KPMG*, there are additional factors present in this case. Sandra Holding has

reviewed certain company documents concerning the 2014 sale of Universal's assets. While this review appears less substantial than the extensive internal audit that occurred in *JAS Forwarding*, it is nonetheless indicative of a reasonably contemplated foreign proceeding.

The respondents argue that the petitioner has not yet stated an exact claim or shown evidence of a ripe dispute (such as a demand letter), but Sandra Holding has stated with some specificity a basic theory of liability and the type of suit it plans to initiate, to wit: a derivative shareholder lawsuit in the Cayman Islands against Universal and Fawzi based on fraud. (Dkt. 4, 29). Similar to *JAS Forwarding*, the petitioner has stated its intent to pursue a legal action and articulated a facially legitimate reason for pursuing this discovery. Further, the petitioner has persuasively explained how the discovery sought might be applied in its pleading before the Grand Court. Finally, Nuri has recently filed three lawsuits against Fawzi and his related entities in Kuwait, suggesting that the petitioner's principal is already committed to pursuing legal disputes regarding Fawzi.[3] In sum,

---

[3] Although the court is not compelled to take notice of these other proceedings, they may well indicate that a future lawsuit is likely. *See In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) (where petitioner "previously brought two related actions" in a foreign tribunal against a respondent, "and represented that it intended to initiate further litigation," there was "a sufficiently concrete basis for a contemplated [foreign] proceeding") (internal quotations omitted).

the record shows that the petitioner is indeed seeking discovery for use in a reasonably contemplated foreign proceeding.

Lastly, the respondents do not dispute that the applicant is an interested person or that the application seeks disclosure of non-privileged materials, and the record does not indicate otherwise. The court finds from the foregoing that the petitioner has satisfied all four statutory requirements necessary for a court to allow discovery under § 1782.

**B. Discretionary Factors**

1. <u>Fawzi</u>

Based on a review of the discretionary factors, this court finds that allowing discovery from Fawzi would be inappropriate. To begin, Fawzi is likely to be a party in the foreign proceeding. The necessity for § 1782 discovery is decreased for parties of the foreign proceeding because the foreign tribunal presumably has the authority to obtain such discovery but may not be able to do the same for nonparties. *Intel*, 542 U.S. at 264; *Minis*, 2014 WL 1599947, at *3. Here, when the petitioner commences its suit in the Cayman Islands and names Fawzi as defendant, it will be able to seek discovery from him through the Grand Court's procedures. While the petitioner asserts in its reply memorandum that Fawzi "will not necessarily be a defendant in the Cayman Islands lawsuit," this directly contradicts the petitioner's stated intention in its first memorandum and in the affidavit of its

foreign counsel to sue Fawzi. More importantly, it seems both improbable and illogical that Sandra Holding would commence a suit over an alleged inappropriate transaction that it believes Fawzi may have orchestrated without naming Fawzi in the suit. While the petitioner is correct in its assertion that one factor should not control the discretionary analysis, the factors collectively weigh against allowing discovery from Fawzi.

As to the second factor (nature and receptivity of the foreign tribunal to the requested materials), both sides make compelling arguments, each citing reputable attorneys practicing in the Cayman Islands. Several courts that have rejected a § 1782 request based on this factor have done so at the express request of the foreign tribunal. *See, e.g., Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006). On one occasion, this district has denied a § 1782 application until the foreign tribunal in question "provide[d] some *affirmative* indication of its receptivity to the requested materials." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008) (emphasis added). Here, the petitioner claims that it must obtain the desired discovery prior to commencing an action so it may meet the strict pleading standards of the Grand Court. The petitioner further asserts that the Grand

9

Court will be receptive to this court's assistance, largely because it has accepted discovery obtained pursuant to § 1782 once in the past, but also because it is a signatory to the Hague Evidence Convention. *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, 2009 CILR 553 (Sep. 24, 2009). The respondents argue, *inter alia*, that Grand Court policies generally prohibit pre-suit discovery and the taking of deposition testimony, and that the pleading standards in the Cayman Islands are not as stringent as the petitioner contends. However, the respondents cite no Grand Court case rejecting discovery obtained under § 1782, nor has the Grand Court requested that this particular application be denied. While the petitioner and the respondents both put forth strong arguments, the court finds that this factor weighs slightly in favor of discovery; the Grand Court appears to be marginally more receptive than it is unreceptive to the type of discovery the petitioner seeks.

The third factor is also adeptly argued by both sides. The respondents allege that the petitioner is using this application to circumvent what they view as the Grand Court policy against depositions. However, the Supreme Court has explicitly ruled that § 1782 does not limit "a district court's production-order authority to materials discoverable in the foreign jurisdiction if located there." *Intel*, 542 U.S. at 243. The petitioner denies attempting to circumvent Grand Court policies and argues that the

10

Grand Court could deny admission of depositions that violate its evidentiary laws. This district has approved a § 1782 application stemming from a Grand Court proceeding in the past. *In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017). Though that proceeding was in progress at the time of the court's ruling and the Grand Court had already approved a deposition of the respondent, *In re Penner*—together with the Grand Court's acceptance of § 1782 discovery in *Lyxor*—nonetheless suggests that discovery may be allowed under § 1782 without offending the proof-gathering restrictions or policies of the Grand Court. The court finds that the petitioner is not attempting to circumvent the proof-gathering restrictions or policies of the Grand Court.

Finally, the fourth factor weighs heavily against allowing discovery from Fawzi, as it would be unduly intrusive and burdensome. Section 1782 requires discovery orders to be "in accordance with the Federal Rules of Civil Procedure" unless the court should order otherwise. 28 U.S.C. § 1782(a); *see Intel*, 542 U.S. at 260. In turn, the Federal Rules of Civil Procedure limit the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In the § 1782 context, "[r]equests are unduly

intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1043.

Here, the petitioner seeks a court order compelling Fawzi to produce a wide range of documents relating to Universal and five other companies (including Quabbin Capital and Sandra Holding) covering a time period from January 1, 1987 (shortly after Universal's formation), to the present day. Sandra Holding also seeks to depose Fawzi. The burden of obtaining discovery from Fawzi far outweighs its potential benefits. As noted above, Fawzi is extremely ill, to the point that sitting for a deposition—whether in the United States or Kuwait—would likely be physically demanding, or even a potential risk to his well-being.[4] While the petitioner asserts that this "makes it all the more important that he be deposed as soon as possible," this argument does not make Fawzi any less sick, nor does it make the process of deposing him any less taxing on his health. Even if discovery were granted as to Fawzi, it seems unlikely that his health would enable him to substantially comply with the petitioner's requests, thus limiting the likely benefit of the discovery. Overall, the burden that

---

[4] The petitioner, presumably aware of Fawzi's medical condition, nonetheless failed to mention it in its initial memorandum in support of its application.

would be imposed on Fawzi by granting the proposed discovery order, even in a limited form, outweighs its potential benefit.

In sum, the second and third discretionary factors weigh slightly in favor of ordering discovery from Fawzi but the first and fourth factors weigh strongly against such an order. As Fawzi is likely to be a party to the Cayman Islands suit regardless of this court's actions, and as no discovery order could be tailored to avoid placing an undue burden on Fawzi, the petitioner's motion is denied as it relates to Fawzi.

### 2. Quabbin Capital & Snow

The first factor weighs in favor of granting discovery as to Quabbin Capital and Snow because neither respondent is likely to be a party in the foreign proceeding. Neither party has suggested that Quabbin Capital or Snow would be named in a future suit in the Cayman Islands, and the record does not suggest otherwise. Thus, the Grand Court may lack the authority to obtain discovery from Quabbin Capital and Snow without assistance from this court, despite their alleged relevance to the matter at hand. *See Intel* 542 U.S. at 264; *Minis*, 2014 WL 1599947, at *3.

For the same reasons discussed above, the second and third factors also weigh slightly in favor of discovery from Quabbin Capital and Snow. The fourth factor also weighs in favor of allowing discovery from Quabbin Capital and Snow, though it also

13

compels this court to limit the scope of such discovery.[5] The petitioner seeks discovery from these respondents that is virtually identical to the discovery it seeks from Fawzi. While the petitioner speculates about alleged wrongdoing by the respondents over the past few decades, it has only shown specific suspicion of one particular wrongful act, that being a related-party transaction in 2014 involving the sale of Universal's assets. This discovery would cover 30 years and six companies, three of which the relationship to the matter at hand is not evident. Much of the requested discovery would not be "relevant to any party's claim or defense and proportional to the needs of the case," as the underlying claim in this case likely centers on one alleged transaction roughly five years ago. Fed. R. Civ. P. 26(b)(1). This court finds that the proposed discovery is disproportionate to the needs of the case. However, a discovery order may be crafted that is in line with § 1782's "twin aims of providing efficient assistance to participants in international litigation

---

[5] It is well within the court's authority to issue a limited or modified discovery order. 28 U.S.C. § 1782(a) (discovery "order may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing"); Fed. R. Civ. P. 26 (court may "limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . [or] (iii) the proposed discovery is outside the scope permitted"); *Intel*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed"); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) ("it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright").

and encouraging foreign countries by example to provide similar assistance to our courts" without imposing an unreasonable or burden on the respondents.  *Intel*, 542 U.S. at 252.

If limited in scope to information regarding the alleged related-party transaction in or around 2014, the discovery requests should not be unduly intrusive or burdensome for Quabbin Capital or Snow.  Complying with a limited request like this will likely not require the respondents to scour the entirety (or even the majority) of their business and financial records.

## V. CONCLUSION

For the foregoing reasons, the petitioner is permitted to seek discovery from Quabbin Capital and Snow, but only pertaining to the sale of Universal's assets in or around 2014.  The petitioner is not permitted to seek discovery from Fawzi.  Therefore, the petitioner's Motion for Issuance of Letters Rogatory Under 28 U.S.C. § 1782 is GRANTED in part and DENIED in part.

**SO ORDERED.**

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  July 15, 2019